**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

UNITED STATES

V.                                                                                                    CASE NO. 1:08CR120

BOONE LAIRY                                                                              DEFENDANT

**ORDER**

This cause comes before the court on the motion [82] of defendant, Boone Lairy, for a judgment nothwithstanding the verdict or alternatively for a new trial.

Lairy was a Sergeant in the West Point Police Department. He served as the coordinator of the Golden Triangle Crimestoppers' Fund ("Crimestoppers"). The government charged him in a two count indictment related to his work with Crimestoppers.

Count One of the indictment alleged Lairy conspired with Nathan Smith, Shawanda Holliday and other persons to defraud the counties and cities that contributed to Crimestoppers. Count two alleged that from on or about February 2004 to on or about May 2008 Lairy unlawfully converted Crimestoppers property, aided and abetted by Smith, Holliday, and other persons.

Holliday entered into a plea agreement with the government. She pled guilty to the Count One conspiracy. The government agreed to dismiss Count Two against her. The court accepted that agreement on February 19, 2009.

On July 1, 2009, the Government dismissed all charges against Nathan Smith. Five days later, Lairy proceeded to trial.

Federal Rule of Criminal Procedure 29(c) provides that a court may set aside a jury's

verdict and enter a judgment of acquittal in a criminal case.  Such a ruling issues only when there is not sufficient evidence for the jury to have convicted.  *United States v. Therm-All, Inc.*, 373 F.3d 625, 630 (5th Cir. 2004) (citing Fed. R. Crim. P. 29(a)).  In deciding such a motion the court "reviews the evidence, all reasonable inferences drawn from it, and all credibility determinations in the light most favorable to the Government.  *Id*. (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)).

Count One charged Lairy with violating 18 U.S.C. § 371.  This charge has three essential elements: (1) "an agreement among two or more persons (2) to accomplish something that constitutes an offense against the United States, and (3) an overt act by one of them in furtherance of the conspiracy."  *United States v. Lichenstein*, 610 F.2d 1272, 1276 (5th Cir. 1980).  Further "the government must prove the requisite intent to commit the substantive offense."  *United States v. Charroux*, 3 F.3d 827, 831 n.4 (5th Cir. 1993) (citing *United States v. Burford*, 889 F.2d 1406, 1409 n.5 (5th Cir. 1989)).  The government had to prove that: (1) Lairy and at least one other person made an agreement to commit the crime of theft concerning programs receiving federal funds; (2) Lairy knew the unlawful purpose of the agreement and joined it with the intent to further that unlawful purpose; and, (3) one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment.

Count Two charged Lairy with theft or fraud concerning government programs.  18 U.S.C. § 666.  Here the government had to prove: (1) Lairy was an agent of a local government; (2) Lairy stole or obtained by fraud some monies; (3) that money was owned by or under the care, custody, or control of the City of West Point; (4) the money obtained had a value of $5,000 or more; and, (5) The City of West Point in a one-year period received benefits of more than

$10,000 under a Federal program.

The court looks first to Count Two. Lairy moves for a judgment of acquittal on two grounds: (1) the government's witnesses were not credible; and, (2) the government failed to introduce proof the amount of money obtained by Lairy was $5,000 or more.

For the purposes of determining whether Lairy is entitled to a judgment as a matter of law the court will not consider the credibility of the witnesses, but must instead take the evidence in the light most favorable to the verdict. The court's sole focus is thus on whether the government proved that Lairy unlawfully converted more than $5,000.

There is no question the government offered sufficient proof that Lairy was an agent of a local government, that he stole or obtained by fraud some monies, that the money was under the care of West Point, and that West Point recieved $10,000 of federal funds within the prescribed period. Lairy only challenges the proof that the amount of money taken was greater than $5,000.

Ramona Brooks testified that she and Lairy had an agreement to split the proceeds of unlawful tips. Brooks' testimony was inconsistent regarding the amount of money she collected through the scheme. However, her testimony does refer to three separate incidents in which she unlawfully received money in the amount of $ 400, $500,[1] and $500 from Lairy.

Holliday also testified to receiving fraudulent codes from Lairy in order to collect Crimestoppers rewards. She testified she repeated this procedure six or seven times eventually obtaining approximately $2100.

The government also put on a number of police officers who testified that rewards had been paid out for arrests made without tips.

---

[1] The court has no doubt Brooks' testimony is wrong on this point. Crimestoppers records show this pay out related to Anthony Skipper was actually only for $150.

Jeff Guyton testified he knew Michael Watson,[2] Jessica Ross, Katherine Williams, Danny Neal, B. Wordlaw, Josh Adams, and James Betts had rewards paid for their arrests, but no tips lead to those arrests. These rewards were for $400, $150, $350, $350, $150,[3] and $100. Mike Burgess testified the arrests of Marcus Seals, Steven Lofton, and Emily Simon where made without Crimestoppers tips. Rewards in the amounts of $350, $500, $150 were paid on these cases.

David Criddle testified the arrests of Michael Watson, Jessica Ross, Quinton Burton, Michael Billups, Danny Neal, B. Wordlaw, Brittany Walker, and Josh Adams were arrested without Crimestopper tips. As discussed previously Crimestoppers awards were paid for the arrests of Michael Watson, Jessica Ross, Danny Neal, B. Wordlaw, and Josh Adams. The remaining three arrests paid out rewards of $350, $150, and $350 respectively. Bill Smith testified Anthony Skipper, Anthony Seals, DeAngelo Fisher, Nichole White, Derrell Henderson, and Adrian Lee were all arrested without the aid of Crimestoppers tips. The rewards for those individuals arrests were $150, $350, $350, $350, $350, and $350. Travis Robertson testified Heather Haze, Britney Walker, James Boyd, Sammie Little, and Remere Burnley were arrested without Crimestoppers' tips. These individuals represent additional fraudulent rewards of $350, $350, $700, and $350. Tony Cooper testified John Nelson and Carlos Moody were arrested without tips and that rewards of $350 and $500 were paid for their arrests. John Pevey testified Randy Gunter, Lamont Harris, Ashley Jackson, and Carol Fullen were arrested without the aid of Crimestoppers. Further he testified rewards of $150, $150, $100, and $100 were paid out for

---

[2] Throughout the testimony and documentary evidence there is a confusion of names. The court has attempted to consistently refer to individuals as they are listed in Exhibit G-7 as introduced in the record. Witnesses have, however, strayed from such identifications.

[3] This single reward represents the payout for both Danny Neal and B. Wordlaw.

their arrests. Natasha Coleman testified Lisa Armstrong and Lee Harris were arrested without tips and Crimestopper awards of $350 and $250 were paid for those arrests.

Similarly, Joey Brackin, Zate McGee, Rick Higgins and Gary Moore all testified to arrests made without the help of Crimestoppers. They established that even though Crimestoppers did not assist in these arrests, Crimestoppers issued awards totaling $2450.

None of this evidence directly implicates Lairy in an attempt to defraud. Other evidence was needed to establish that element. This evidence does support a finding that more than $5,000 was improperly paid.

A reasonable jury could believe Lairy was involved in a conspiracy to defraud Crimestoppers as testified to by Brooks, that Lairy with the assistance of others actually did defraud crimestoppers as testified to by Brooks and Holliday, and that Lairy's fraud was in the amount of $11,400. That $11,400 represents Crimestoppers funds paid for arrests that were not aided by Crimestoppers tips. While the officers who established this amount could not testify as to why this money was paid out, it is an easy step of logic to infer these payments were part of Lairy's scheme to defraud the program. Therefore, this count of conviction shall stand.

In regard to Count One Lairy argues very generally that there is no evidence of a conspiracy and more specifically that if there is evidence of a conspiracy it could not have started before 2007 or 2008 as opposed to the 2004 through 2008 dates alleged in the indictment.

As stated above the evidence indicates Lairy actually committed the underlying offense. This itself is evidence of conspiracy.

Further, Brooks was questioned about her role and the role of Lairy in the alleged conspiracy. Brooks testimony was not particularly articulate. She never stated she was involved in a conspiracy with Lairy. Of course "[d]irect evidence of a conspiracy is unnecessary; each

element may be inferred from circumstantial evidence." *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) (citing *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993)). "An agreement may be inferred from a 'concert of action.'" *Id*. (citing *Cardenas*, 9 F.3d at 1157; *United States v. Natel*, 812 F.2d 937, 940 (5th Cir. 1987)).

Brooks testified that Nathan Smith told her to call in the names of individuals already arrested to Crimestoppers and collect rewards for those arrests. Brooks testified she did just that. She spoke with Boone Lairy at Crimestoppers in order to collect reward money for tips that she never provided. This fact alone would only support an inference of incompetence on the part of Lairy. However, Brooks also testified that once she collected the reward money she would meet Mr. Lairy at the Columbus River Walk and split that money with him. The division of the money shows that Lairy did not believe he was paying out legitimate rewards. It indicates the rewards paid were part of a plan to defraud Crimestoppers

This is enough to establish an agreement between Lairy and Brooks to defraud Crimestoppers. As discussed above Lairy followed through with that agreement thereby actually accomplishing a federal crime. The evidence also supports a finding that Lairy took an overt act towards this goal by presenting false information to the Crimestoppers Board in order to get rewards approved and by giving out reward codes to Brooks and Holliday.

A jury could have reasonably believed that Lairy was guilty of both the charged counts. As such Lairy is not entitled to a judgment notwithstanding the verdict.

Federal Rule of Criminal Procedure 33(a) provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Under this Rule, a "trial judge may weigh the evidence and assess the credibility of the witnesses in considering [a] motion" for a new trial. *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (citing *United States v.*

*Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). The court does not, however, have unlimited discretion and it 'may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" *Id*. (quoting *Robertson*, 110 F.3d at 1118). In order for a new trial to be granted "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*. (quoting *Robertson*, 110 F.3d at 1118).

The proof in this case was not compellingly presented. However, there was credible testimony in regards to a conspiracy to steal from Crimestoppers. There was proof that an actual theft of Crimestoppers money occurred and that the theft was carried out in part by Lairy. The government offered testimony from a number of law enforcement officers establishing the theft to be more than twice the required level to be an offense against the United States. While the stories of the government's witnesses included some inconsistencies, they each painted the same picture of Lairy's scheme to defraud Crimestoppers. The court will therefore deny Lairy's request for a new trial.

Lairy's motion for a judgment notwithstanding the verdict or alternatively for a new trial is DENIED.

This the 22nd day of October, 2009.

                                                        **/s/ MICHAEL P. MILLS**
                                                        **CHIEF JUDGE**
                                                        **UNITED STATES DISTRICT COURT**
                                                        **NORTHERN DISTRICT OF MISSISSIPPI**